STATE *ex rel.* FRED BLEICH and DORILE BLEICH, LES BUR BLEICH, BETTY A. BLEICH, JIMMIE J. BLEICH, GEORGE L. BLEICH and TOMMIE L. BLEICH, minors, by FRED BLEICH, as their next friend, v. THE BOARD OF PUBLIC INSTRUCTION for HILLSBOROUGH COUNTY, E. L. ROBINSON, as County Superintendent of Public Instruction and H. P. CHAMBERS, as Principal of Lutz Public School.

190 So. 815
Opinion Filed June 27, 1939
Rehearing Denied August 1, 1939

*Ralph C. Binford,* and *O. R. Moyle* (of the New York Bar), for Plaintiff in Error;

*William E. Thompson,* for Defendants in Error.

TERRELL, C. J.—Pursuant to authority vested in it by law, the Board of Public Instruction of Hillsborough County, as a part of its patriotic program, promulgated a regulation requiring all children attending the public free schools to salute the flag.

Plaintiffs in error are citizens of Hillsborough County and are enrolled in the public free school located at Lutz. They are members of a religious sect known as "Jehovah's Witnesses" and declined to make any manual obeisance to the flag as required by the regulation referred to. They were ordered to leave school but were permitted to return on condition that they salute the flag in obedience to the Board's regulation. Persisting in their refusal, alternative writ of mandamus was directed to defendants commanding them to permit relators (plaintiffs in error here) to re-enter school or show cause why they refuse to do so. A motion to quash was granted, the cause dismissed, and the instant writ of error was prosecuted.

The question we are called on to answer is whether or not as part of its patriotic program, the Board of Public Instruction of Hillsborough County may require all children attending the public free schools to salute the flag even though for religious reasons, they have conscientious scruples against doing so.

Plaintiffs in error contend that any manual salute or physical obeisance to the flag is contrary to the law of God and deprives them of their free exercise of religious liberty. To support this contention, they rely on verses four, five,

and six, Chapter Twenty of the Book of Exodus, Section 5, Declaration of Rights, Constitution of Florida, and the First and Fourteenth Amendments to the Federal Constitution.

In so far as reliance is placed on the First and Fourteenth Amendments to the Constitution of the United States, the Supreme Court has definitely settled that question contrary to the contention of plaintiff in error. Leoles v. Landers, 302 U. S. 656, 58 Sup. Ct. Rep. 364, 82 L. Ed. 507 (192 S. E. 218, 184 Ga. 580) ; Coale v. Pearson, 290 U. S. 597, 54 Sup. Ct. 131, 78 L. Ed. 525 ; Hamilton v. Regents of University of California, 293 U. S. 245, 55 Sup. Ct. 197, 79 L. Ed. 343 ; Herring v. State Board of Education of New Jersey, 303 U. S. 624, 58 Sup. Ct. 752, 82 L. Ed. 1087.

The Fourth, Fifth and Sixth verses of Exodus Twenty, were embraced in the command of Moses to the children of Israel forbidding them to make and worship graven images. Like all law, whether promulgated by statute, edict, or ukrase, this command grew out of the exigencies of the times and we cannot see that it has any relation whatever to the present situation. It would be as pertinent to rely on some requirement of the Assyrian, the Hittite, or the Code of Hammurabi.

Saluting the flag is nothing more than a symbolic expression or a restatement of one's loyalty and fervor for his country and its political institutions. It is patriotism in action. It has no reference to or connection whatever with one's religious belief. Saluting the flag connotes a love and patriotic devotion to country while religious practice connotes a way of life, the brand of one's theology or his relation to God. They are as clearly distinguished as Communism is from Democracy, as Calvanism is from Shintoism, or as Nudism is from the rule in Shelley's case. One

is in no sense inconsistent with the other and saluting the flag does not approach religious rite.

Even if it be so, freedom of religious practice is not an absolute right. As do all other constitutional guaranties, it has its limitations. Practices in the name of religion that are contrary to approved canons of morals or that are inimical to the public welfare, will not be permitted even though done in the name of religion. To symbolize the flag as a graven image and ascribe to the act of saluting it a species of idolatry is too vague and far fetched to be even tinctured with the flavor of reason.

The First Amendment applied a break to the nation. The Fourteenth Amendment applied a break to the States. Section 5, Declaration of Rights, Constitution of Florida, applied an additional break to the State of Florida. For the purpose of this case, they may all be read together and when so done, they ban any State law "respecting an establishment of religion or prohibiting the free exercise thereof." Requiring children who attend the public free schools to join in patriotic exercises, such as saluting the flag, in no respect infringes on a free exercise of their religious belief nor can we see that it tends in any way to set up a State religion. The Constitution contains no other inhibition.

If an objection as remote from religious grounds as the one involved here may be successfully interposed for that reason, then there is no limit to the reasons that conscientious objectors may advance as grounds for avoiding patriotic duties. Individual judgment in matters of religion no less than in civic controversies must give way to that of the instrumentality set up by the State to direct it.

The law of this State (Sections 1683, 616, 618, 619, and 620) requires that the flag be displayed daily, the weather permitting, from the State Capitol, from every County Court house and public school building and that the Constitution

including American ideals and institutions be taught in all high schools, colleges and universities. Nothing more is shown to have been done in this case.

In addition to the cases cited, the following cases support this view: Leoles v. Landers, *supra;* Herring v. State Board of Education of New Jersey, 118 N. J. L. 566, 194 Atl. 177; Charlotte Gabrielli v. Dorothy Knickerbocker, Cal. App. 74 Pac. (2d.) 290; Nicholls v. Mayor and School Committee of Lynn, Mass, 7 N. E. (2d.) 577; Gobotis, *et al.,* v. Minersville School District, 21 Fed. Supp. 581; Pierce v. Society of Sisters of the Holy Name of Jesus and Mary, 268 U. S. 510, 45 Sup. Ct. 571, 69 L. Ed. 1070; Nichols v. Mayor and School Committee of Lynn, 110 A. L. R. 377.

There was no error, so the judgment is affirmed.

Affirmed.

WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.

### ON PETITION FOR REHEARING

PER CURIAM.—This cause having been submitted to the Court upon petition of the Attorney General for a rehearing in this cause and same having been duly considered; it is ordered by a majority of the Court that the said petition be, and the same is, hereby denied.

TERRELL, C. J., and WHITFIELD, CHAPMAN and THOMAS, J. J., concur.

BROWN and BUFORD, J. J., dissent.

BUFORD, J. (dissenting to denial of Petition for Rehearing).—On consideration of petition for rehearing filed by the Attorney General in this cause, it appears to me that while the rule enunciated in the opinion prepared by Mr. Chief Justice TERRELL and filed herein on June 27, is correct

insofar as it upholds the power of the school authorities to require salute of the flag of the United States as a part of patriotic exercises to be performed by the pupils attending public free schools in the county, it does not necessarily follow that the school authorities may lawfully expel a pupil from school because such pupil declines to comply with the requirement when such declination is based solely on the ground that such saluting of a flag violates the religious convictions of the pupil.

That we can find no support in Scripture for such religious belief, or conception, does not warrant our condemnation of the reasoning of one whose construction of some part of the Bible may lead him to entertain convictions of that sort. The most profound Bible students the world has ever known have disagreed amongst themselves as to the construction to be given to many passages of Scripture and this difference of opinion amongst the learned has led, and is still leading to the organization of various denominations and to the following of various creeds. The punishment of expulsion from public school is an unusual and severe punishment. It not only affects the child to whom it is administered but it destroys the usefulness of that child as a citizen and thereby deprives the public of the benefit of the best available citizenship in that child. It will have its effect upon the offspring in the future generation springing from that child; and, as has been suggested by the Attorney General, it affords the vehicle by which a designing parent may frustrate the provisions of law requiring school attendance of children within certain designated ages.

It occurs to me that in the interest of preserving American ideals, and especially that of religious freedom, and we should not by law require one to affirmatively engage in an act, not essential to the public welfare or the support of

the government, which he or she conscientiously believes to be contrary to his or her religious tenets, and thereby make of such person a martyr to his or her religious faith. The salute of the flag is, after all, a physical demonstration of respect, and nothing more. Certainly, there can be no logical reason why some alternative expression of respect and loyalty cannot be substituted for those whose religious tenets, faith or beliefs precludes their indulgence in a physical salute and thereby satisfy the demands of patriotism and at the same time respect the religious views of the individual.

For these reasons, I am willing to join in the granting of a petition for rehearing.

BROWN, J., concurs.